Mr. Justice Hagner
delivered the opinion of the court.
Barker Brothers, dealers in ice, in Georgetown, ordered from the Water Cove Ice Company of Bath, Maine, a cargo of ice which was shipped in July, 1879, consigned to them at Georgetown on the schooner E. M. Wright.
The vessel arrived about the 15th of the month and the captain, on his arrival, reported to the consignees. By them he was directed to lay his vessel alongside their wharf and unload his cargo. He informed the consignees that he declined to discharge the cargo until he had received his freight in full. The consignees objected to paying the freight in advance of the discharge of the goods, insisting that it was not payable until they had had an opportunity of inspecting the cargo after it was landed. The captain adhered to his refusal, and two propositions were then made by the consignees: Eirst, that if he would proceed with the delivery they would pay the freight as the cargo was delivered, pa.ri passu. The other proposition was that he should land the cargo ; that it should be stored in an ice warehouse belonging to the consignees on the wharf, after which the consignees would pay the freight. Both these proposals ■were refused by the master. The vessel remained for some time in the neighborhood of the wharf, the cargo diminishing in consequence of the intense heat of the weather and *26 finally the captain dropped out into the stream, filed a libel against the cargo for his freight, and the ice was sold by an order of court, realizing an amount insufficient to discharge the full amount of the freight, The consignees, thereupon, filed a libel 'against the vessel, its tackle, apparel, &c., to recover the value of the cargo of ice, estimated at $1,500, which they alleged had been wholly lost to them, in consequence of the refusal of the captain to deliver it. The case was heard before the judge of the District Court and the libel dismissed, and it 'now comes before this court upon an appeal from that decree.
The propriety of the decision below depends upon the question whether the captain had the right to insist upon the payment of his freight before the discharge of the goods. It was contended upon the part of the captain that whatever the general rule on the subject might be there were two circumstances in the particular case which would qualify its application :
First. It was said that the exceptional character of the cargo, owing to its perishable nature, gave to the captain the right to refuse to land the cargo, under the heat of the July sun, until he should receive his wages for the transportation of the unmelted cargo. It seems to us that the general rule on the subject cannot be modified to meet the peculiarities of the cargoes which may be shipped on board vessels. There doubtless are cargoes less perishable than ice, but there are others which are infiuitely more so ; and we find no warrant for the idea that the well-settled rule of law on the subject can be changed and shifted to meet such exigen cies in a particular case.
Second. It is said that the provision in the bill of lading that the cargo shall be discharged by the consignee with the assistance of the crew, is exceptional in its nature, and that its effect should be to give a stricter right to the master to demand prepayment of freight.
We have found no warrant for this conclusion.
If this were an exceptional provision in the charter party, it would seem to us that the effect might be considered as *27 rather limiting than increasing the rights of the master in regard to the prepayment of his freights.
In point of fact the provision in question is not exceptional, but appears to be generally, if not universally, inserted in bills of lading of ice;' and frequently where the cargo is the reverse of perishable; and nowhere has such effect been given to it by the courts.
The case, therefore, is to be decided according to the-goneral rule governing such cases, and this we consider is well settled in the case of the Eddy, reported in 5 Wallace, 482. Jt is there laid down that “ in the absence of an agreement to the contrary, the ship owner has a lien upon the cargo for the freight, and may retain the goods after the arrival of the ship at the port of destination, until the payment. But the master, however, cannot detain the goods on board the vessel. He must deliver them. An actual discharge of the goods at the warehouse of the consignees is not required to constitute delivery. It is enough that the master discharge the goods upon the wharf giving due and reasonable notice to the consignee of the fact.” The Mary Washington, Chase’s Decisions, 125; Logs of Mahogany, 2 Sumner, 601.
“ The freight cannot be demanded unless the goods are delivered or tendered, or delivery is prevented by the act or fault of the shipper or consignee.” 2 Pars. Cont., 295.
There is nothing in the delivery of the goods upon the wharf, before payment of the freight, at all inconsistent with the retention by the master of his lien for his freight. It is settled by all the authorities that the payment of freight cannot be exacted until there has been such discharge of the cargo as to enable the consignee to inspect the goods, to see and ascertain whethér they really correspond with those ordered by him. Vitrified Pipes, 14 Blatch., 274. As he is under no obligation to receive or pay for goods differing in •character from those which he contracted to buy, there can be no duty devolving upon him to pay freight for the carriage of goods not corresponding with his order. We do not suppose that the consignees in this ease, upon the landing of the *28 ice, could have refused to pay freight for the entire cargo as shipped, because part of it had been destroyed by melting. For any unusual loss or diminution, the consignee might have a remedy against the underwriter. But since the cargo must be considered as at the risk of the consignees, from the time of its shipment and the mailing of the bill of lading to them, the obligation to pay freight for the entire amount shipped might be enforced against the consignees. The inspection spoken of would be for the purpose of ascertaining that the goods wore of the character and description ordered.
We see nothing in the case of Britton vs. Barnaby, 21 Howard, 527, which is in opposition to the rule announced in the case of the Eddy. It is there declared to be the general l’ule that delivery of goods at the place of destination, or readiness to deliver, is a' precedent condition to the fight to demand payment of freight. In the case at bar, the captain absolutely refused to commence the delivery until the freight had been paid in full. It is certainly true that the captain had the right to demand payment before the cargo was taken away from the wharf in such a way as to interfere with the reasonable enforcement of his lien. And in the ease of Britton vs. Barnaby, the Supreme Court say, “ if the shipment is large, so that it cannot be landed in one day, the master may require a pro rata payment as regards value, before the parcels first landed can be taken away.” But neither of the propositions submitted to the master by the consignees would have resulted in any imperiling of his lien for freight. The pro rata plan suggested by the consignees, would have secured the captain the payment of his freight pari passu with its delivery; and the second offer, to store the ice in a convenient warehouse on the wharf, could not have operated to embarrass the enforcement by the captain of his lien. Sears vs. Wills, 4 Allen, 212; The Kimball, 3 Wall., 37; The Eddy, 5 Wall., 481; The Bird of Paradise, 5 Wall., 545.
Tinder the circumstances disclosed in the record, we are of opinion that the libel below should have been sustained, the consignees,, in our opinion, having a just claim against *29 the vessel for the loss of so much of the cargo as resulted from the wrongful act of the captain. The case is therefore remanded that proper proceedings may be taken to ascertain the amount for which a decree should be entered.
Note. — A rehearing of this case was subsequently allowed, at which, in addition to the justices above named, was Justice Mac Arthur; and Mr. Justice Wylie announced the opinion of the court, sustaining its ruling as above.